Carl Lee CALLOWAY, Appellant,

v.

The STATE of Texas, Appellee.

No. 09 83 004 CR.

Court of Appeals of Texas,
Beaumont.

April 3, 1986.

Rehearing Denied April 23, 1986.

W.E. Harper, Beaumont, for appellant.

John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

In a previous opinion filed May 2, 1984, we remanded this cause for a new trial. *Calloway v. State,* 700 S.W.2d 3 (Tex.App. —Beaumont 1984, pet. granted). As we viewed and analyzed the record, there was a reasonable issue as to conflict of interest indicated because of the defense attorney's representation of "one of the co-defendants".

Trial counsel stated:

"[MR. HARPER:] ... I firmly believe that there is a conflict of interest that developed on or about the time that I filed this motion. And I did not recognize the conflict of interest to be as serious or would have any bearing on the case until such time as I notified the Court...."

Since, undoubtedly, the conflict of interest was brought to the attention of the trial court, we held that the trial court had a duty to conduct a hearing on the matter. The Court of Criminal Appeals ruled that we were wrong. *Calloway v. State,* 699 S.W.2d 824 (Tex.Crim.App.1985). The case of *Lerma v. State,* 679 S.W.2d 488, 497 (Tex.Crim.App.1984) (Opinion on Motion for Rehearing), teaches that in these situations, however, "[e]ach case will be adjudged on an individual basis." Our judgment was reversed and the cause remanded for consideration of grounds of error not previously disposed of by our court.

Previously, the sufficiency of the evidence points were decided. Necessarily, we state some of the salient facts because of the "fundamental errors" urged upon us by the Appellant in attacking the charge of the court. We do this because of *Almanza v. State,* 686 S.W.2d 157, 160 (Tex.Crim. App.1985) (Opinion on State's Motion for Rehearing).

The record shows that the contraband was in close proximity to Calloway. Some of the paraphernalia which is customarily used in consuming the contraband; in this case, the drug cocaine, was found directly in front of him on the table at which Calloway was seated. Calloway was facing the paraphernalia. The Appellant was found to be sitting at a table with an aluminum foil and a water pipe on the table directly in front of him. He was the closest person to it. There was another person in the room, but the Appellant was in the nearest proximity to the foil and the water pipe. The water pipe was a type of paraphernalia used to consume cocaine. The aluminum foil, upon analysis, contained a part of a grain of cocaine. The water pipe had traces of cocaine.

When the peace officers, armed with a search warrant, first observed Appellant, he was dropping a lighted match. It was obviously dropped in haste as it fell upon a piece of paper which became ignited. The physical facts lead to the reasonable conclusion that the Appellant had just lighted a stove near the table. On the stove was a pot of water being heated. In the pot of water was a vial which contained cocaine. Appellant was closest to the stove.

In reviewing the grounds not previously disposed of by us, we note that each one of the grounds of error alleged that the court committed "fundamental error" in instructing the jury. We hold that the Appellant received a fair trial and fundamental error is not shown. We rely on *Almanza v. State, supra.* There were no objections or exceptions to the court's charge.

But aside from *Almanza, supra,* we also hold that the Appellant has not shown any error under this record, much less any fun-

damental error, when measured by *Almanza, supra.* We overrule each and every one of the grounds of error based upon the doctrine of "fundamental error." The Appellant advances, as a group, 6 grounds of "fundamental error" alleging improperly instructing the jury on the law of parties. He argues: (1) that there was insufficient evidence that the Appellant acted as a party; (2) that the instruction did not properly apply the law to the facts; (3) that there was no evidence that the Appellant acted as a party; (4) insufficient evidence that the Appellant acted as a party to jointly possess, and very similar contentions. Again, we must repeat that these matters were urged strictly as "fundamental errors". We overrule these 6 grounds of error.

Appellant attacks that portion of the charge that applies the law to the facts. In that portion, the court used the phrase "either acting alone or as a party". No fundamental error is shown. *Almanza, supra. See Thomas v. State,* 587 S.W.2d 707 (Tex.Crim.App.1979). *See also Todd v. State,* 601 S.W.2d 718 (Tex.Crim.App.1980).

▆▆▆ We conclude that the evidence in this case shows that the Appellant exercised possession, control, care and management over the contraband. *Nunn v. State,* 640 S.W.2d 304 (Tex.Crim.App.1982); *Rhyne v. State,* 620 S.W.2d 599 (Tex.Crim. App.1981). Of course, the control or possession need not be exclusive. It can be jointly exercised with other persons. *Wilkes v. State,* 572 S.W.2d 538 (Tex.Crim. App.1978). When the accused is not in the exclusive possession of the place where the contraband is found or is not in exclusive possession of the contraband itself, then the State must show that there are additional, independent facts and circumstances which affirmatively linked the accused with the contraband. We find independent facts and circumstances in the case subjudice do affirmatively link the Appellant with the contraband. *Flores v. State,* 650 S.W.2d 429 (Tex.Crim.App.1983). *See also Cude v. State,* —— S.W.2d —— (Tex.Crim.App. 1986), No. 107–85, March 5, 1986.

In *Thomas v. State, supra,* the court wrote, at page 708:

"The part of the court's charge to which we normally look in determining whether the charge is fundamentally erroneous is the part that applied the law to the facts. *Jones v. State,* 576 S.W.2d 393 (Tex.Cr.App.1979). By this rule, we mean that we normally look to the part that applied the law of the offense for which the appellant was convicted...."

By this course is meant the applying of the law to facts. Under this record, the jury could have not been misled. Fundamental error is not shown. Under this record, even the charge on the law of parties was harmless error if it was error at all. The same is certainly true of that part of the charge which applies the law to the facts. *Todd v. State, supra.* We overrule Appellant's grounds of error nine through fourteen.

▆▆▆ The next group of alleged fundamental errors complain of the charge of the court in failing to instruct the jury on the law of circumstantial evidence. These grounds of error are three in number. Considering the physical facts and circumstances surrounding this Appellant, no fundamental error is shown. The evidence demonstrates that another person, a Mr. Sutton, was standing behind the Appellant in the kitchen when the law enforcement officers came into that room. Sutton and the Appellant were the only two adults in the house. To repeat, there were no objections or exceptions to the charge of the court. Hence no error was preserved; nor, on appeal, is any error presented for review. Here, the thrust of the complaint was instructing the jury on the law of circumstantial evidence and omitting the words "and no other person". Under this record, error is simply not shown. In *Odell v. State,* 95 Tex.Crim. 360, 254 S.W. 977 (1923), we find, at page 978:

"... When there is evidence supporting a theory that the accused *and others* committed the offense, it would be an error against the state for the court to instruct the jury that they must believe

to a reasonable and moral certainty that the accused 'and no other person' committed the offense." (Emphasis added) *Grego v. State*, 456 S.W.2d 123 (Tex.Crim. App.1970). *Odell, supra,* and *Grego, supra,* reasoned that the words "and no other person" may be omitted from the charge if the evidence in the case subjudice demonstrates that there were other participants in the crime. We overrule Appellant's grounds of error fifteen through seventeen.

We conclude that the main thrust of the evidence in this case is direct evidence. Specifically, we further find "no egregious error" as required by *Almanza*, as to any of the alleged fundamental errors. See *Hankins v. State*, 646 S.W.2d 191 (Tex. Crim.App.1981). We also find that Appellant received a fair trial and the results were fair. We affirm.

*Almanza, supra,* approved of the concept or doctrine that it is too late to complain of the charge of the court after the verdict is rendered unless the charge is so drawn as to prevent the accused from having a fair and impartial trial. We find this language at page 171:

> "On the other hand, if no proper objection was made at trial and the accused must claim that the error was 'fundamental', he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm' ".

■ There is one remaining alleged ground of error. It complains of the trial court's refusal to suppress certain evidence because of the lack of standing of the Appellant to complain, arguing that the trial court did not apply the proper legal test to ascertain the Appellant's standing. We think that the record on this point is confusing. There was a lively dialogue between the trial judge and trial attorney for the Appellant. The dialogue concerned itself, in its major thrust, with the motion to withdraw because of conflict of interest. But then we find:

"MR. HARPER: Yes, sir. Your Honor, at this time we ask the Court to suppress this evidence because—

"THE COURT: Wait, wait. You have got to show that your client has a right to complain first. I'm not even going to hear the motion to suppress until he has satisfied me he has standing to complain.

. . . .

"THE COURT: What you are telling the Court, your client does not have—he was arrested there but he doesn't have a proprietary or possessory interest in the residence?

"MR. HARPER: That is right, has no proprietary nor possessory interest, did not have any clothes there, no belongings there and was only a guest in that house, invited guest.

"THE COURT: Also has no proprietary interest?

"MR. HARPER: That is right.

"THE COURT: The Court, having considered the issue of standing, the Court finds the Defendant does not have standing to complain of the search warrant, therefore the Court will not consider the motion to suppress.

Further, the Court finds that as stated by Defense Counsel the Defendant does not have a proprietary or possessory interest in the premises and under Rakas vs. the United States, a Supreme Court case, no issue has been brought before the Court to even allow the Defendant to contest the search warrant and issuance of the search warrant.

"MR. HARPER: Would the Court note our objections to the Court's rulings. We feel like we should have an opportunity to test the validity."

It is unequivocally shown, by the skeletal, bare bones record before us, that Appellant conceded he had no possessory or proprietary interest. But, on appeal, he argues that the trial court erred in refusing his right to test the validity of the search warrant because the proprietary or possessory interest test has been abandoned. Appellant says that he had a legitimate expectancy of privacy in the premises that

were searched. The Appellant also argues that his Fourth Amendment rights were violated.

Appellant relies on *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) and *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Arguing that, under Supreme Court law, the rights and immunities entitled to protection under the Fourth Amendment do not depend on a property interest in the place searched but, rather, whether the residence search was one in which this Appellant, under the individual facts and circumstances surrounding his presence, caused a reasonable expectation of freedom from governmental intrusion. With almost Clarence Darrow-like eloquence and zeal, Calloway concludes: "Thus, Appellant was denied his Constitutionally guaranteed rights to freedom from unreasonable searches and seizures and to Due Process of Law."

But other than the statement of counsel, there was not established in the record any facts of any legitimate privacy interest in the premises searched. Defense counsel's statements, no matter how unequivocal and how sincere, did not—standing alone—state that the Appellant was a guest in the house—establish this constitutionally protected legitimate expectation of privacy. Any evidence or testimony to support his position should have developed and presented the same to us for review. This was not done. Under this record, we find that no harm was shown.

In *McVea v. State*, 635 S.W.2d 429 (Tex. App.—San Antonio 1982, pet. ref'd), the court held, at page 434:

> "Therefore, in order to be entitled to seek suppression of evidence of a crime, a defendant must establish that some personal Fourth Amendment privacy interest of his was violated by police actions involving the premises searched or the property seized."

The Appellant has failed to establish any personal Fourth Amendment privacy interest. We overrule ground of error eighteen.

Ground of error eight is so closely parallel to ground of error seven, involving the conflict of interest, that we decide that the Court of Criminal Appeals, in its opinion, has already determined that ground of error eight is totally without merit. Having reviewed all of the undisposed grounds of error, we now affirm the judgment and sentence below.

AFFIRMED.